AMERICAN NAT. BANK et al. v. WARNER. (No. 456.)

(Court of Civil Appeals of Texas. El Paso. May 13, 1915. Rehearing Denied June 3, 1915.)

1. LOGS AND LOGGING ☞3—SALES OF STANDING TIMBER—CONSTRUCTION OF CONTRACTS.

Plaintiff and his brother held a contract to cut timber on certain land in which M. claimed to have an interest. Plaintiff and M. entered into an agreement providing that M. would consent to such contract, that plaintiff would pay M. $7 an acre, and for the further consideration that, if M. was successful in a suit then pending for a one-half interest in such land, he would accept such sum in full payment for his interest in the timber, that the payments were to be evidenced by vendor's lien notes, which, with the money arising from payments thereon, were to be placed in escrow to be paid over to M. at the termination of the litigation, if he should establish his title thereto, and that, if he should lose his title, such moneys and notes should belong to plaintiff. Held, that M. was not to be paid the $7 an acre merely for his acquiescence, and that, having been unsuccessful in the litigation over the land, he had no claim to the money and notes.

[Ed. Note.—For other cases, see Logs and Logging, Cent. Dig. §§ 6–12; Dec. Dig. ☞3.]

2. APPEAL AND ERROR ☞724—ASSIGNMENTS OF ERROR—SUFFICIENCY.

An assignment of error reading, "Defendants except to the judgment rendered herein in that it is contrary to the law and the evidence," was too general to require consideration.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 2997–3001, 3022; Dec. Dig. ☞724.]

3. COSTS ☞172—ATTORNEYS' FEES—PARTIES ENTITLED.

Certain notes and moneys paid thereon were delivered to a bank in escrow for delivery to M., if he established an interest in certain land, and otherwise to be delivered to plaintiff. M. failed to establish his interest, but the bank delivered the money and notes to him; he guaranteeing it and its liquidating agent against loss. Plaintiff sued M., the bank, and the liquidating agent, and recovered. The bank also recovered judgment against M. Held that, notwithstanding the guaranty of the bank against loss, it and its liquidating agent were properly allowed an attorney's fee, as their interests were antagonistic to the interests of M., and their attorney performed sufficient services to obtain a judgment in their favor.

[Ed. Note.—For other cases, see Costs, Cent. Dig. §§ 665–687; Dec. Dig. ☞172.]

Appeal from District Court, Harris County; John A. Read, Judge.

Action by George P. Warner against the American National Bank and others. From a judgment for plaintiff, defendants appeal. Affirmed.

Frank A. Woods, of Franklin, H. Masterson, Elliott Cage, N. G. Kittrell and Hunt, Meyer & Teagle, all of Houston, and E. B. O'Quinn, of Wharton, for appellants. Andrews, Streetman, Burns & Logue, of Houston, for appellee.

Findings of Fact.

HIGGINS, J. The Atwood heirs claimed title to a part of the Adelia Yokum survey, in Hardin county, and had filed suit in the United States District Court of Beaumont against H. Masterson to recover title and possession thereof and against Wm. D. and Geo. P. Warner to recover damages for timber cut thereon. On April 27, 1907, Wm. D. Warner secured a written concession from the plaintiffs in said suit (or purporting to come from them), granting to him the right to cut and sell the timber on the land.

Geo. P. Warner was engaged in the business of purchasing, cutting, and selling timber and ties, and was operating in conjunction with his brother, Wm. D. Warner. In the fall of 1909, Geo. P. Warner desired to cut, without interruption or hindrance, the timber off of the Atwood tract, and shortly prior to September 22, 1909, he was informed by Masterson that he claimed an interest in the land which Warner was then cutting over, and that, unless some arrangement was made between them, an injunction or some like process would be sued out. On the date last mentioned, Geo. P. Warner had a conversation with Masterson which resulted in them entering into a contract of that date;

the portions thereof material to a considera- tion of this appeal reading:

"That whereas said party of the first part has made and entered into a contract with the heirs of Charles Atwood, of New York, for the right to cut and dispose of all of the timber on that certain tract or parcel of land in the Adelia Yocum survey in Hardin county, Texas, known as the Atwood tract in said survey, which Atwood tract is described as follows: * * * And whereas, the party of the second part claims to own an undivided one-half (½) interest in said land. And whereas, the said party of the first part is desirous of proceeding with the cutting and marketing of the timber on said land, and in order to do so, without interruption or hindrance on the part of the said party of the second part, has agreed with said party of the second part as follows: That the party of the second part will acquiesce in and consent to the contract made and existing between the said party of the first part and the heirs of said Charles Atwood, so far as the right to cut and dispose of said timber is concerned. That the party of the first part will pay to the party of the second part, as hereinafter indicated, the price of seven dollars per acre for the acquiescence aforesaid to proceed with cutting the timber on said land under said contract with the Atwood heirs, *and the further consideration that in the event the said party of the second part is successful in the suit now pending in the United States Court in Beaumont for a one-half interest in said property that he will accept the said seven dollars per acre in full payment for his half interest in the timber on said land.* Said payments are to be made as follows, to wit: One hundred and forty-four and ⁶⁶/₁₀₀ ($144.66) dollars in sixty (60) days from date hereof, and one hundred and forty-four and ⁶⁶/₁₀₀ ($144.66) dollars each subsequent thirty (30) days thereafter *until the full amount of seven dollars per acre for one-half of said timber shall have been paid, satisfied and discharged.* Said payments to be evidenced by the vendor lien notes of the party of the first part, *which notes, and the money arising from payment of said notes, are to be placed in escrow in the American National Bank of Austin, Texas, to be paid over to the said Masterson at the termination of the litigation about said land, in the event that he should establish his title thereto. In the event that he should lose his title thereto, then said money and notes shall belong to the said party of the first part, so far as the party of the second part is concerned,* except as to the interest on said money, which is to be paid to H. Masterson every six months, at the rate of eight per cent. per annum from this date. The failure to pay any note as herein provided shall, at the option of the said Masterson, terminate this contract and the right of the party of the first part to proceed in cutting said timber or the said party of the second part shall have the right to declare all of said notes due and payable their maturity dates on their faces to the contrary notwithstanding, and each and all of said notes are to be secured by a vendor's lien on one-half of the timber cut or sold or cut and sold off of said land. *The right to sell said timber is not to be restricted by this instrument,* except after notice by said party of the second part of the failure on the part of the party of the first part to comply with the terms and provisions of this agreement, after which notice it shall not be lawful for any more timber to be cut or sold off of said property. This contract is to be of two years duration from this date, and the party of the first part is to have no rights thereunder after that date."

The italics are ours. In this contract, Warner is referred to as first party and Masterson as second party. When it was entered into, the suit mentioned was then pending. A copy of this agreement and the notes therein provided for were deposited with the American National Bank. Up to April 2, 1910, Warner had paid the first five of said notes; the proceeds thereof being placed in the savings department of the bank as provided by the agreement. The American National Bank went into liquidation, and prior to January 9, 1911, was placed in the hands of Arch McDonald, as liquidating agent. On January 9, 1911, without the knowledge or consent of Warner, McDonald turned over to Masterson the remainder of the Warner notes and the cash which Warner had theretofore paid to the bank under said contract. On April 12, 1911, a final judgment was entered in the suit pending in the United States District Court, whereby the Atwood heirs, as plaintiffs, recovered a judgment against Masterson for title to and possession of the above-mentioned land. The judgment recited the parties announced in open court that they had agreed upon a settlement and adjustment of all matters in controversy between them in the cause, and the judgment was entered in accordance with their agreement. In accordance with the agreement, it was further decreed that the plaintiffs were to pay Masterson $1,500 in settlement of his claim to the land, and a lien to secure its payment was fixed upon the land. This sum was paid to Masterson when due and the lien released. The plaintiffs in said cause dismissed their suit for damages against Wm. D. and Geo. P. Warner, and they were discharged without day. Masterson never at any time interfered with or attempted in any way to prevent Geo. P. Warner from cutting the timber on the land.

This suit was brought by Geo. P. Warner against Masterson, the American National Bank, and its liquidating agent, McDonald, to recover the money paid by him under the contract between himself and Masterson, and to cancel the notes given thereunder, all of which had been turned over to Masterson as above stated.

From a judgment in Warner's favor, the defendants prosecute this appeal.

### Opinion.

[1] The case was tried without a jury, and, upon the facts stated, the court held that, upon entry of the judgment against Masterson in the United States Court, Warner became entitled to the surrender of the money and notes in controversy. In this conclusion we concur. The contract between Warner and Masterson is perfectly plain and unambiguous. There is no need to resort to the rules of interpretation to which the appellants refer in order to ascertain its meaning.

Appellants contend that the $7 per acre was to be paid to Masterson for his mere acquiescence and consent to the contract between Warner and the Atwood heirs, so far as concerned the right to cut and dispose of

the timber. There would be some force in this contention, were it not for the italicized portions of the contract, which clearly and beyond controversy show that the money was to be held in escrow by the bank and paid to Masterson for his interest in the timber if he was successful in the suit pending in the federal court; that it was to be paid over to Masterson at the termination of the litigation, in the event only he established his title to the land, and, if he was unsuccessful in the litigation, the money and notes were to belong to Warner. These provisions plainly establish that, upon the rendition of the judgment against Masterson for title and possession of the land, Warner became entitled to the money and notes. Argument can make the matter no plainer. This view of the meaning of the contract disposes of all questions presented under the first six assignments.

[2] The eighth assignment reads:

"Said defendants except to the judgment rendered herein in that it is contrary to the law and the evidence."

This is so general that it cannot be considered.

[3] Under the seventh assignment, Masterson complains of the allowance of an attorney's fee to his codefendants, the bank and McDonald, because it was not necessary for them to employ counsel to represent them in the case, as Masterson had guaranteed them against loss when the money and notes were delivered to him, and the counsel which they employed had been required to do nothing but merely file an answer. The force of these reasons is not apparent. The interests of Masterson were antagonistic to the bank and McDonald, and a judgment against him was rendered in their favor. The attorneys seem to have done enough to get this judgment. It seems very clear that these defendants needed an attorney to see that their rights were protected.

Affirmed.